# In the United States Court of Federal Claims

|  |  |
|---|---|
| GILBANE FEDERAL, | |
| Plaintiff, | No. 25-1265 |
| v. | Filed: June 17, 2026 |
| THE UNITED STATES, | |
| Defendant. | |

*Michael A. Branca* of Peckar & Abramson, P.C., Washington, D.C., argued for Plaintiff.

*Ioana C. Meyer* of the United States Department of Justice, Civil Division, Washington, D.C., argued for Defendant. With her on the briefs were *Brett A. Shumate*, *Patricia M. McCarthy*, and *Steven Michael Mager*, of the United States Department of Justice, Civil Division, Washington, D.C.

## MEMORANDUM AND ORDER

In June of 2020, only a few months after the President of the United States had declared the COVID-19 pandemic an emergency, Plaintiff Gilbane Federal (Gilbane or Plaintiff) entered into Contract No. W912HN-20-C-3006 (Contract) with the Army Corps of Engineers (Corps) for the construction of a government facility located at Fort Gordon, Georgia. When disputes arose under this Contract, and after the Corps denied two of its certified claims, Gilbane appealed to separate venues: one appeal to this Court, and one appeal to the Armed Services Board of Contract Appeals (ASBCA).

The first dispute arose when Gilbane submitted a certified claim to the contracting officer (CO) on May 26, 2022, requesting compensation and a schedule extension. The claim was partially settled, but the CO denied certain contract modification preparation costs, which Gilbane

appealed to the ASBCA on September 19, 2023. The second dispute arose after Gilbane encountered delays allegedly caused by labor shortages, worker illnesses, and similar labor difficulties due to the COVID-19 pandemic. On June 7, 2024, Gilbane submitted a second certified claim to the CO seeking 61 days of excusable, non-compensable delay to the Contract completion date, in addition to contract preparation costs. The CO denied Gilbane's second certified claim on August 6, 2024, and on July 31, 2025, Gilbane filed suit in this Court under the Contract Disputes Act (CDA) to appeal the second denial. Gilbane seeks two forms of relief in this Court: (1) sixty-one days of excusable, non-compensable delay and (2) the reimbursement of $30,537.67 in administrative costs related to proposal preparation and modification and claim preparation.

On January 9, 2026, Defendant the United States filed a Motion to Transfer and Stay Proceedings, seeking to transfer this action to the ASBCA pursuant to 41 U.S.C. § 7107(d), which permits the Court of Federal Claims to transfer cases to agency boards. Defendant contends that this Court should transfer the present action because, among other reasons, the proceedings at the ASBCA arose out of the same Contract and concern an overlapping issue. Plaintiff opposes the Motion to Transfer.

As articulated below, this Court has broad discretion when considering a Motion to Transfer under 41 U.S.C. § 7107(d). In examining the present case, all of the factors favor transfer of the action to the ASBCA. Accordingly, this Court **GRANTS** Defendant's Motion to Transfer and Stay Proceedings (ECF No. 12).

**STATEMENT OF FACTS**[1]

### I.    The Contract

On May 31, 2019, the Corps issued Solicitation No. W912HN-19-R-3004 for the construction of a new "Cyber Instructional Facility and Network Center" at Fort Gordon, Georgia. ECF No. 1 (Complaint) ¶ 5.  Plaintiff, a "full-service general contractor," submitted its final proposal for the facility on September 13, 2019.  *Id.* ¶¶ 2, 7.  On March 13, 2020, the President of the United States declared a national emergency related to the COVID-19 pandemic.  *Id.* ¶ 9.  On June 19, 2020 (280 days after Gilbane submitted its final proposal), the Corps awarded Gilbane firm-fixed-price Contract No. W912HN-20-C-3006 that covered construction of the facility in exchange for $96,903,333.  *Id.* ¶ 8.

Plaintiff claims that the COVID-19 emergency negatively "impacted" its work and the work of its subcontractors.  *Id.* ¶ 13.  The impacts included an "[o]verall lack of labor resources," a concrete subcontractor's "inability to find qualified manpower in the local area," a "[s]maller pool of crew and supervision that were qualified to access Fort Gordon," and "[i]ndividual worker illnesses caused by COVID-19."  *Id.*

On October 15, 2021, Plaintiff indicated in a monthly schedule update that the project had fallen 31 days behind schedule.  *Id.* ¶ 15.  On October 25, 2021, the Corps issued a Letter of Concern regarding schedule delays.  *Id.* ¶ 16.  Plaintiff and its subcontractors took several measures to address the delays, including overtime work, higher wages, and "out of area recruitment."  *Id.* ¶ 18.  On January 12, 2022, the Corps issued Request for Proposal (RFP) 0027, which addressed

---

[1] The Court accepts the facts in the Complaint as true for the purpose of resolving the Motion.  *See Rockwell Automation, Inc. v. United States*, 70 Fed. Cl. 114, 116 n.2 (2006); *see also* ECF No. 12 (Motion to Transfer or Mot.) at 5 n.2 ("For this statement of facts, we rely on the allegations in Gilbane's complaint, [and] exhibits to its complaint . . . .  We respectfully reserve the right to challenge any of the facts alleged by Gilbane in the future, should this motion be denied.").

project delays due to COVID-19, and subsequently agreed to extend the completion period to January 20, 2022. *Id.* ¶ 20.

Despite mitigation efforts that Plaintiff allegedly undertook, delays mounted, and Plaintiff requested 69 days of excusable, non-compensable delay on February 14, 2022. *Id.* ¶ 21. Plaintiff also requested $21,645.00 "for proposal preparation costs, which included time incurred by Gilbane's Project Executive and Project Controls-Scheduler." *Id.* The Corps denied that request as lacking merit on February 22, 2022; Plaintiff then provided supplemental material to support its submission. *Id.* ¶¶ 22, 23. On April 27, 2022, the Corps issued Unilateral Modification A000018/R00021, which granted Gilbane eight days of excusable, non-compensable delay for delays that accrued through January 20, 2022. *Id.* ¶ 26.

In response, Plaintiff indicated that it intended to submit a Request for Equitable Adjustment (REA). *Id.* ¶ 27. Plaintiff submitted its REA on March 11, 2024, seeking 61 days of excusable non-compensable delay. *Id.* ¶ 29. Plaintiff calculated the 61-day figure by subtracting the eight days granted by the Government from the 69 days that Plaintiff had earlier requested. *Id.* ¶ 29. The Corps denied the REA on March 29, 2024. *Id.* ¶ 30.

## II.    Plaintiff's Court of Federal Claims Suit

On June 7, 2024, Plaintiff filed a Certified Claim with the CO that sought relief on the same grounds as the denied REA. *Id.* ¶ 31; *see* ECF No. 1-2 (Certified Claim) at 2. In its Certified Claim, Plaintiff sought 61 "calendar days of excusable, non-compensable extension" and $30,537.67 for REA preparation costs. Certified Claim at 2. On August 6, 2024, the CO denied Plaintiff's Certified Claim, finding "<u>no merit</u>" in either the sixty-one-day schedule extension or the claim for $30,537.67 in costs. ECF 12-1 (Defendant's Appendix or Appendix) at 2 (emphasis in original). With respect to the claim for 61 days of excusable, non-compensable delay, the CO

4

found that Plaintiff "did not show that the days it request[ed] were excusable and attributable to COVID-19." App. at 13. The CO denied the claim for $30,537.67 in REA preparation costs because the REA itself "lack[ed] merit." *Id.* at 15. In addition, the CO determined that the contract modification preparation and execution costs that Plaintiff claimed were an attempt to "recover the same costs twice." *Id.* at 15. Specifically, the CO stated that the Government believed that Plaintiff was double counting the same contract modification costs both "through its G&A rate and a second time directly as a line item." *Id.* Additionally, the CO found that Plaintiff "did not segregate its REA preparation costs in any meaningful way for the [Corps] to discern which costs are REA preparation costs (allowable) versus which costs are modification proposal preparation and execution costs (not allowable)." *Id.* at 16.

Plaintiff appealed the CO's denial of the Certified Claim in its entirety to the Court of Federal Claims, and this appeal is the subject of the present action (COFC Claim). Compl. at 8.

### III.    Plaintiff's ASBCA Suit

In addition to the present suit, Plaintiff previously appealed to the ASBCA a separate, adverse CO decision arising out of the same Contract. Specifically, on May 26, 2022, Plaintiff submitted to the CO a separate, certified claim in connection with the same Contract. Mot. at 8; App. at 22 (May 26, 2022, Certified Claim). The May 26, 2022, Certified Claim sought $999,034.00 plus interest and a 22-day extension "resulting from the Government's direction to insulate the Medium Temperature and High Temperature Chilled Water Supply Lines," which Plaintiff alleges was outside the scope of the Contract. App. at 22–23; *see* ECF No. 14 (Response) at 9. The money sought in the Certified Claim included costs related to modification preparation and execution costs. Resp. at 9.

The parties resolved most, but not all, of the issues raised in the May 26, 2022, Certified Claim before the CO issued a final decision.  Mot. at 8.  On June 22, 2023, the CO denied the portion of the May 26, 2022, Certified Claim relating to a line item of $8,041.69 for "Preparation and Execution of Mod."  *Id.*  The CO found that Plaintiff had improperly included modification proposal costs as both direct and indirect costs.  *Id.* at 8–9.  On September 19, 2023, Plaintiff appealed the CO's final decision to the ASBCA and requested "$8,041.69 in modification preparation and execution costs."  *Id.* at 9; Resp. at 9.  Plaintiff's ASBCA appeal was docketed as number 63717 (ASBCA Claim) and, to date, the Corps has answered the Complaint and provided the Rule 4 file.[2]  Mot. at 9, 12.  The ASBCA Claim was stayed by joint agreement of the parties through September 8, 2025, in order to consolidate that appeal with two others: ASBCA appeals 63702 and 63775.  *Id.* at 4 n.1, 9.  ASBCA 63702 and 63775 each concern a separate contract, not at issue here, between Plaintiff and the Corps.  Resp. at 9.

### PROCEDURAL HISTORY

Plaintiff filed its Complaint on July 31, 2025.  The Court granted multiple unopposed motions for extensions of time for Defendant to respond to the Complaint.  *See* ECF Nos. 8, 11.  On January 9, 2026, Defendant filed the present Motion to Transfer to the ASBCA and Stay Proceedings.  On January 30, 2026, Plaintiff filed its Response in opposition to Defendant's Motion.  On February 6, 2026, Defendant filed its Reply in support of its Motion.  ECF No. 15 (Reply).  The Court conducted oral argument on April 29, 2026, and the Motion is ripe for review.  Minute Entry dated Apr. 30, 2026.

---

[2] The Rule 4 file at the ASBCA includes all documents related to the contract at issue that the agency considers "relevant" to the appeal.  *See* DFARS App. A Rule 4(b).

6

## LEGAL STANDARD

### I.    Transfer to Agency Boards

The CDA allows the Court of Federal Claims to transfer cases to the ASBCA either "for the convenience of parties or witnesses or in the interest of justice":

> If 2 or more actions arising from one contract are filed in the United States Court of Federal Claims and one or more agency boards, for the convenience of parties or witnesses or in the interest of justice, the United States Court of Federal Claims may order the consolidation of the actions in that court or transfer any actions to or among the agency boards involved.

41 U.S.C. § 7107(d).  Here, an "agency board" includes the ASBCA.  *Id.* § 7101(2)(A).  This Court "possesses broad discretion in exercising its power to consolidate" or transfer a case to an agency board.  *Joseph Morton Co. v. United States*, 757 F.2d 1273, 1280 (Fed. Cir. 1985).  The decision to transfer a suit filed in this court to an agency board is a "discretionary action that embraces a variety of factors, and is an *ad hoc* determination."  *Multi-Roof Sys. Co., v. United States*, 5 Cl. Ct. 245, 247 (1984) (citing *E.D.S. Fed. Corp. v. United States*, 1 Cl. Ct. 212, 214 (1983)).

In weighing a decision to transfer a case to an agency board, the Court of Federal Claims has considered the following factors:

> (1) Whether the dispute before the board and the court concern the same contract; (2) whether the claims before the court and the board duplicate claims or have overlapping and related issues; (3) whether plaintiff initially chose to appeal its claims before a court or a board; (4) whether one forum or the other has already made significant progress on the claims; (5) whether concurrent resolution would result in an inefficient allocation of the court's, board's, or party's resources; (6) whether separate forums would reach inconsistent results.

*Avant Assessment, LLC v. United States*, 134 Fed. Cl. 323, 332–333 (2017) (quoting *Morse Diesel Intern., Inc. v. United States*, 66 Fed. Cl. 801, 804 (2005)); *see CH2M Hill Hanford Grp., Inc. v. United States*, 82 Fed. Cl. 139, 145 (2008) (considering materially identical factors); *Rockwell Automation*, 70 Fed. Cl. at 126 (same); *Highway and Safety Servs., Inc. v. United States*, No. 23-

1854, 2024 WL 1298555, at *2 (Fed. Cl. Mar. 26, 2024) (same).  The Federal Circuit "has not explicitly commented on this framework, but has upheld Court of Federal Claims decisions that have relied on it."  *CH2M Hill*, 82 Fed. Cl. at 145 (citing *In re Morse Diesel Int'l*, 163 Fed. App'x 878, 879 (Fed. Cir. 2006)).

## DISCUSSION

Plaintiff and Defendant (collectively, the Parties) agree that the six-factor test described in *Avant Assessment* should dictate the outcome of the present Motion but disagree as to whether the factors favor granting the Motion.[3]  Mot. at 9–10; Resp. at 10.  Accordingly, the Court analyzes each of the six factors in turn.

---

[3] In addition to the six factors listed in *Avant Assessment*, the Parties raised an additional jurisdictional question in the briefing and at oral argument. The Parties agree that Gilbane's appeal to this Court occurred after the 90-day deadline had passed to appeal the instant claim to the ASBCA.  Resp. at 10 n.1; Reply at 6; *see also* 41 U.S.C. § 7104(a) (providing 90 days for appeal to the ASBCA after receipt of the contracting officer's final decision), *id.* § 7104(b)(3) (providing one year for appeal to the Court of Federal Claims after receipt of the contracting officer's decision).  Plaintiff avers that this raises the question of whether the ASBCA would have jurisdiction over the instant claim in the event of a transfer. Resp. at 10 n.1.  The Court finds that the overwhelming weight of authority indicates that the ASBCA will retain jurisdiction over the claim upon transfer regardless of the original deadline to appeal before the ASBCA.  *See Glenn v. United States*, 858 F.2d 1577, 1580–81 (Fed. Cir. 1988) (recommending transfer and consolidation with an ASBCA claim under a predecessor statute despite the fact that the case had been brought in the Court of Federal Claims outside of the 90-day time limitation at the ASBCA); *Meltech Corp. v. United States*, No. 21-1532C, 2023 WL 1960803, at *2 (Fed. Cl. Feb. 13, 2023) ("Nothing in § 7107(d) limits this Court's transfer authority to complaints filed within 90 days of the contracting officer's decision." (citing *Glenn*, 858 F.2d at 1581)); *see also Suffolk Constr. Co. v. Gen. Servs. Admin.*, CBCA No. 4377, 16-1 BCA ¶ 36,476 (Civilian Board of Contract Appeals finding that "the COFC's authority to transfer actions to agency boards under 41 U.S.C. § 7107(d) is not limited to only those actions filed with the COFC within ninety days of receipt of the CO's final decision." (citing *Glenn*, 858 F.2d at 1581)); *Logics, Inc.*, ASBCA No. 46914, et al., 01-2 BCA ¶ 31,482, at 155,419 ("[O]ur jurisdiction in a transfer case is predicated on timely suit rather than a notice of appeal"); *Southwest Marine, Inc. v. United States*, 680 F. Supp. 327, 329–30 (N.D. Cal. 1988) (transferring a suit filed outside of the 90-day window in the district court to the ASBCA).  *But see Nova Grp./Tutor-Saliba v. United States,* 127 Fed. Cl. 591, 595–96 (2016) (declining to transfer a claim filed at the Court of Federal Claims outside the 90-day window to the ASBCA because "[i]t would not be prudent for this Court to transfer a case to a forum which might lack

8

## I.    Same contract

The first factor to consider before transfer is whether both disputes concern the same contract. *See Colonna's Shipyard, Inc. v. United States*, 146 Fed. Cl. 713, 716 (2020).  In this case, the Parties agree that the COFC Claim and ASBCA Claim each concern the same Contract. Resp. at 11, Reply at 2.  Accordingly, the first factor favors transfer.

## II.    Related and overlapping issues

When the claims before the Court of Federal Claims and the agency board "either duplicate each other or have overlapping and related issues," the interest of justice supports transfer.  *Avant Assessment*, 134 Fed. Cl. at 333.  "Neither the statute nor the case law require that the issues presented in each case be entirely synonymous to justify consolidation or transfer."  *Colonna's Shipyard,* 146 Fed. Cl. at 716.

Defendant argues claims in both fora involve the same legal issue: whether Plaintiff's claimed contract modification and preparation costs are recoverable under the Contract; and that both claims relate to the same clauses of the Contract.  Mot. at 11, ECF No. 18 (Oral Argument Transcript or OA Tr.) 4:24–5:7.  According to Defendant, because "[r]esolution of one cost claim would necessarily resolve the other," the two issues present sufficient overlap to warrant transfer. Mot. at 11.  Plaintiff does not dispute that both claims involve the same cost recovery issue but argues that the "overriding issue" in the COFC Claim is not the cost accounting issue but rather

---

jurisdiction").  Finally, while not dispositive, the Court memorializes that at oral argument, the same agency counsel who is counsel of record before the ASBCA represented to this Court that, post-transfer to the ASBCA, Defendant will not move to dismiss the instant claim for untimeliness and that Defendant will enter into a tolling agreement with Plaintiff at the ASBCA should the ASBCA dismiss the instant claim *sua sponte*.  OA Tr. at 10:19–23; 29:1–17.

the "[r]esponsibility for delay and relief from liquidated damages" associated with the 61 days of alleged COVID-19 related delays, an issue not present in the ASBCA Claim.[4] Resp. at 12.

As both claims involve the same underlying legal question of whether Plaintiff can recover certain contract modification costs, this factor favors transfer.  In the COFC Claim, the Parties dispute "whether [Plaintiff] double-counted its RFP preparation and contract modification administration costs by including these costs as a line item and in its indirect General and Administrative Rate (G&A rate)."  *Id.* at 8.  In the ASBCA Claim, the Parties dispute "whether [Plaintiff] included the modification and execution costs as direct cost[s] under a specific line item and again as part of Gilbane's indirect G&A rate."  *Id.* at 9.  Each dispute concerns the proper cost accounting of Plaintiff's modification preparation costs under the same Contract.  Where the claims "differ in specific factual detail" but the "overall proof regarding th[e] counts . . . require[s] almost identical legal analyses and presentations of similar evidence," transfer is warranted. *CH2M Hill*, 82 Fed. Cl. at 146 (citing *Giuliani Contracting Co. v. United States,* 21 Cl. Ct. 81, 83 (1990)).

While the COFC Claim also includes the alleged COVID-19 related delay issue, this additional issue does not preclude transfer.  Claims need not be "entirely synonymous" to justify transfer, and transfer can be warranted even where independent issues exist in only one forum if there is sufficient overlap between the two cases.  *Colonna's Shipyard,* 146 Fed. Cl. at 716.  For instance, in *CH2M Hill Hanford Group*, only "two of the three counts in each complaint" involved "the same respective clauses in the Contract or . . . the same legal analyses" but, despite this, there remained "extensive overlap between the two actions."  82 Fed. Cl. at 146.  Similarly, in *BES*

---

[4] At oral argument, Defendant's counsel indicated that the Government has not yet filed a counterclaim against Gilbane for liquidated damages; accordingly, the Court does not consider this argument here.  OA Tr. at 5:21–6:3.

10

*Design/Build*, both claims involved different aspects of performance under the same contract, but the board claim related to "delay, a specific pay application, and the termination for default" while the Court of Federal Claims case dealt with "pay for additional paint and sewer line work." *BES Design/Build, LLC v. United States*, 157 Fed. Cl. 668, 671–72 (2022). In that case, the court concluded that the "same issues, broadly speaking" still needed to be addressed to resolve both claims. *Id.* at 672.

Transfer is inappropriate when the issues arising from the same contract are generally distinct and do not overlap. For example, in *Precision Pine & Timber, Inc. v. United States*, the agency board appeal involved the question of damages related to a default, whereas the Court of Federal Claims case involved the government's compliance with the Endangered Species Act. 45 Fed. Cl. 134, 136 (1999); *see also Northrop Grumman Corp. v. United States*, 70 Fed. Cl. 230, 233 (2006) (finding that the "essential issue before the ASBCA is not the same issue as is before this court"); *Rockwell Automation*, 70 Fed. Cl. at 126–27 (finding that the "disputed matters focus on the interpretation of different portions of the contractual language" and that "findings and conclusions" in one forum would not "affect the claims pending before the other adjudicatory body.").

Accordingly, the common legal issue present in both the ASBCA Claim and the COFC Claim weighs in favor of transfer.

### III.    Choice of forum

"Plaintiff's first choice of forum is relevant to deciding which forum will hear the case, *assuming* that consolidation is appropriate." *Precision Pine & Timber*, 45 Fed. Cl. at 137 (emphasis in original). Defendant argues that Plaintiff's initial choice to file the first claim concerning this Contract with the ASBCA supports transfer. Mot. at 11–12 (citing *CH2M Hill*, 82

11

Fed. Cl. at 149 (considering plaintiff's initial choice to file a similar claim under the same contract with the agency board)).  Plaintiff counters that its filing of this specific claim for COVID-19-related delay with the Court of Federal Claims demonstrates its preference for the issue to be litigated in this forum, and that this Court should "consider Gilbane's 'preference for one forum over another.'"  Resp. at 13 (quoting *Rockwell Automation*, 70 Fed. Cl. at 127).

As noted, consolidation of these claims lodged under the same Contract is appropriate in this case; therefore, Plaintiff's initial choice of forum supports transfer.  While Plaintiff might prefer to litigate its COVID-19 delay claim in the Court of Federal Claims, the Court looks to "whether [P]laintiff initially chose to appeal its claims before a court or a board."  *Avant Assessment*, 134 Fed. Cl. at 332 (citing *Morse Diesel*, 66 Fed. Cl. at 804); *see also Colonna's Shipyard*, 146 Fed. Cl. at 717 (rejecting plaintiff's argument that it filed a separate claim "and brought it here to the Court precisely because it wanted separate review" as "irrelevant as to which forum [plaintiff] first pursued"); *BES Design/Build*, 157 Fed. Cl. at 672 ("Because plaintiff's [agency board] cases were filed first, this factor favors transfer.").

Accordingly, since Plaintiff's initial choice was to file a claim under the Contract in the ASBCA, this factor supports transfer.

## IV.     Risk of delay

Where the "ASBCA has clearly invested more substantial resources in [the ASBCA claim] than the court has in the instant litigation," the interest of justice and judicial economy favor transfer.  *Colonna's Shipyard,* 146 Fed. Cl. at 717.  On the other hand, "[i]f one forum has conducted extensive proceedings, placing all of plaintiffs' claims in that one forum might lengthen unduly its proceedings."  *Am. Renovation & Constr. Co.*, 77 Fed. Cl. at 104.  In the ASBCA action, the Parties have filed the complaint, answer, and initial Rule 4 filing but have not yet begun

12

discovery.  Mot. at 12, OA Tr. at 8:18–25.  In the present suit, the Parties have only filed the Complaint and briefed the Motion to Transfer.

Plaintiff cites *Precision Pine* to support its argument that transfer and consolidation of the two claims would unduly lengthen proceedings in the ASBCA.  *See* Resp. at 13.  However, in *Precision Pine*, the parties before the agency board had already filed cross motions for summary judgment and had almost completed briefing on those motions.  *Precision Pine*, 45 Fed. Cl. at 137. Similarly, in *American Renovation and Constr. Co.*, where the Court of Federal Claims denied a motion to transfer and instead opted to stay the case until resolution of the ASBCA appeal, the ASBCA had already made "extensive progress" before the Court of Federal Claims ruled on the motion to transfer.  77 Fed. Cl. at 105.

In this case, the ASBCA is somewhat further along in resolving the claim before it than is this Court, but unlike in *Precision Pine & Timber*, the ASBCA is not currently considering dispositive motions and does not appear to be close to a final resolution of the case.  Reply at 7.[5] Indeed, the Parties agree that discovery has not yet commenced.  OA Tr. at 8:23–25, 18:9–20. Plaintiff surmises that transfer would cause significant delays associated with "preparing expert witness testimony and reports associated with the delay claims and relevant defenses," and that this type of "fact intensive and complex schedule analysis . . . will hamper the progress already made at the ASBCA."  Resp. at 13–14.  While it is possible that discovery related to the COVID-delay claim could lengthen the process at the ASBCA if the two cases are consolidated, the fact that the ASBCA has "invested more substantial resources" on a claim common to both cases but

---

[5] The Court relies on the representation the Parties made at oral argument.  Even if discovery at the ASBCA has commenced since oral argument, the Parties there are still not as advanced as the parties were in *Precision Pine*.  *See Precision Pine*, 45 Fed. Cl. at 137.

also is not close to a final resolution of that claim, means that transfer would be the most efficient outcome. *See Colonna's Shipyard,* 146 Fed. Cl. at 717. Accordingly, this factor favors transfer.

## V.   Preventing duplication

"The court's resources are better allocated to matters that are not being evaluated concurrently by a separate tribunal." *Colonna's Shipyard,* 146 Fed. Cl. at 717. Where "two cases will likely involve identical legal analyses and related presentations of factual evidence," transfer is appropriate. *CH2M Hill*, 82 Fed. Cl. at 149.

Defendant argues that the cost accounting issue that is common to each claim would result in the duplication of judicial resources by this Court and the ASBCA. Mot. at 13. Defendant states that it is "more than likely that depositions will be required of many of the same witnesses" and that "any document discovery would concern the same sets of documents, resulting in duplicative work to prepare, produce, and review those documents." *Id.* At oral argument, Defendant specifically identified two project executives involved in both claims who, Defendant averred, would need to be deposed in both cases. OA Tr. at 24:20–25:15. Plaintiff argues that any such duplication would be "minimal" since, in Plaintiff's view, the cost accounting issue is largely a legal dispute and, further, that the delay claim would require additional depositions and discovery related to Plaintiff's concrete subcontractor that would not be necessary in the ASBCA Claim. Resp. at 14; OA Tr. at 15:5–7.

However, the potential for non-duplicative discovery related to the delay claim is irrelevant. Instead, the question is whether continuing, concurrent litigation of the overlapping issue in two different forums would duplicate efforts. *See Colonna's Shipyard,* 146 Fed. Cl. at 717. While Plaintiff believes that any such duplication would be "minimal," even minimal duplication weighs in favor of transfer under this factor. Resp. at 14; *see Colonna's Shipyard,* 146

Fed. Cl. at 717 ("Even if the litigation in this court is less 'robust' than the litigation before the ASBCA, as plaintiff suggests, it is litigation nonetheless.").

Accordingly, this factor supports transfer. For each forum to review substantially similar evidence and depose the same witnesses in two claims that share a common legal issue would be unnecessarily duplicative and an inefficient use of party and judicial resources.

## VI.    Collateral estoppel

Transfer may be proper when resolution of a related claim in one forum would bind a second forum, otherwise known as collateral estoppel. *See CH2M Hill*, 82 Fed. Cl. at 149. Collateral estoppel "holds that once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Id.*; *see also Kroy IP Holdings, LLC v. Groupon, Inc.,* 127 F.4th 1376, 1380 (Fed. Cir. 2025) (defining collateral estoppel).

Collateral estoppel applies between the Court of Federal Claims and agency boards. *See Caldera v. Northrop Worldwide Aircraft Servs., Inc.*, 192 F.3d 962, 971 n.7 (Fed. Cir. 1999) ("[T]he parties do not dispute that 'the same principles of judicial efficiency which justify application of the doctrine of collateral estoppel in judicial proceedings also justify its application in quasi-judicial [agency] proceedings [at the ASBCA].'" (quoting *Graybill v. United States Postal Serv.,* 782 F.2d 1567, 1571 (Fed. Cir. 1986))); *see also United States v. Utah Constr. and Mining Co.,* 384 U.S. 394, 422 (1966) ("When an administrative agency is acting in a judicial capacity and resolve[s] disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose."); *Crowley v. United States,* 398 F.3d 1329, 1342 (Fed. Cir. 2005) (Dyk, J., concurring) (noting that

15

with respect to the Court of Federal Claims and the Merit Systems Protection Board, "a decision by one will be collateral estoppel as to the other"), *cert. denied*, 546 U.S. 1031 (2005).

In this case, resolving either the COFC Claim or the ASBCA Claim would mean resolving the common legal question of whether Plaintiff can claim contract modification and preparation costs as a direct or indirect cost. Plaintiff argues that "[t]he facts underlying each modification and preparation cost could differ," so there may be no collateral estoppel. Resp. at 15. This argument is unpersuasive. This Court and the ASBCA are both tasked with interpreting the same legal issue in the same Contract. This means that the forum that resolves the question first would estop the other from reviewing the same question. Plaintiff also argues that the issue of delay is not common to both claims, so the Court could not be estopped from considering that question. *Id.* However, the existence of the additional issue in this case does not mitigate the concern that the ASBCA, which is already further ahead in litigation, "could collaterally estop this Court in regard to an issue common to both cases" as to whether Plaintiff is entitled to recover costs counted as a line item and again as part of Plaintiff's G&A rate. *CH2M Hill*, 82 Fed. Cl. at 150. Accordingly, because of the risk of collateral estoppel as to the cost accounting issue, this factor favors transfer.

**CONCLUSION**

After weighing the relevant considerations, the Court concludes that transfer to the ASBCA is warranted.  Accordingly, Defendant's Motion to Transfer and Stay Proceedings (ECF No. 12) is **GRANTED** and this action is **TRANSFERRED** to the Armed Services Board of Contract Appeals pursuant to 41 U.S.C. § 7107(d).  Accordingly, the Clerk of Court is directed to **TRANSFER** this case to the Armed Services Board of Contract Appeals by mailing a certified copy of this Memorandum and Order and a copy of the docket sheet in this action to the Armed Services Board of Contract Appeals at 4825 Mark Center Drive, Suite 600, Box 6, Alexandria, VA 22311.

IT IS SO ORDERED.

_Eleni M. Roumel_
ELENI M. ROUMEL
Judge

June 17, 2026
Washington, D.C.

17